UNITED STATES

v.

**Airman First Class Norman S. SPONSELLER, FR 287–56–3548 United States Air Force.**

**ACM 22626.**

U. S. Air Force Court of Military Review.

Sentenced Adjudged 31 May 1979.

Decided 16 Sept. 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter, Major Robert T. Mounts and Colonel Michel Levant, USAFR.

Before POWELL, MILES and MAHONEY, Appellate Military Judges.

## DECISION

MILES, Judge:

In this case, we hold that the accused did not benefit from treaty provisions between the United States and Spain as to double jeopardy since proceedings against the accused before Spanish courts were not criminal trials.

Contrary to his pleas, accused was convicted of conspiracy to sell marijuana and possession, use and several sales of marijuana in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934.

In increasing amounts, the accused sold marijuana in the hashish form on 3 May, 14 May and 28 May, 1978 to undercover Air Force Office of Special Investigation (OSI) agents. Toward the end of May, arrangements were made for a sale of approximately five kilograms of hashish on 1 June 1978 for $10,500.00. At the consummation of the sale on 1 June, the accused along with two other Air Force members [1] and one Spanish national were apprehended by OSI and Spanish law enforcement agents and 4.65 kilograms of hashish were confiscated.

Subsequently, United States authorities pursuant to treaty arrangements with Spain requested criminal jurisdiction over

---

1. The other Air Force members' cases have already been reviewed by this Court. See *United States v. Brewer*, 9 M.J. 509 (A.F.C.M.R. 1980), certified, 9 M.J. 16 (C.M.A. 1980); *United States v. Stokes*, 8 N.J. 694 (A.F.C.M.R. 1979), pet. granted, 9 M.J. 122 (C.M.A. 1980).

the case. Spain agreed to waive their general criminal jurisdiction exercised by the Spanish Court of Instruction, the criminal court in Spain which initially investigates felony offenses. However, two Spanish courts, the Contraband Court and the Court of Social Rehabilitation, retained and exercised jurisdiction.

The Court of Social Rehabilitation is a court empowered to incarcerate, as a preventive measure, persons dangerous to public health and decency in Spain. It can imprison a dangerous person for up to three years, but the normal period of detention is one to three months, together with court-ordered rehabilitation. Normally, foreigners, if found dangerous, are sentenced to deportation or expulsion for five years. On 7 February 1979, that Court determined accused did not possess characteristics that would make him dangerous within the application of relevant Spanish law.

The Contraband Court is a Spanish administrative court, presided over by a Spanish Delegate of Finance, which deals with infractions of customs and tax laws. Punishments can extend to fines up to six times the value of the goods involved. Around 14 December 1978, the accused was advised that the Spanish Contraband Court of Zaragoza, Spain, considering only the incident of 1 June, imposed against him a fine in Spanish currency equivalent to $10,065.00. This fine was not paid. An Article of the new Spanish Constitution, effective on 28 December 1978, has been held to prohibit imprisonment for inability to pay such fines. This provision applies retroactively to accused's case.

At accused's court-martial trial in May 1979 in Spain, trial defense counsel moved to dismiss the charges against the accused because of the proceedings in Spanish courts. Accused's counsel before this Court assert that such proceedings divested the United States court-martial of jurisdiction because of relevant treaty arrangements between Spain and the United States.

Treaty arrangements between the United States and Spain regulate the exercise of criminal jurisdiction over United States forces personnel in Spain as well as other matters relevant to the presence of U.S. Forces in Spain.[2] The Articles relating to the exercise of criminal jurisdiction are elaborate and detailed. A comprehensive jurisdictional formula is included, provision is made for custody and cooperation, and various procedural due process rights are guaranteed. In particular, Articles XXII and XXIII provide as follows:

### Article XXII

Where an accused has been tried in accordance with the provisions of this Agreement either by the military authorities of the United States or the authorities of Spain and has been acquitted, or has been convicted and is serving, or has served, his sentence, or his sentence has been remitted or suspended, or he has been pardoned, he may not be tried again for the same offense within the territory of Spain by the authorities of the other State. However, nothing in this Article shall prevent the military authorities of the United States from trying a military member of the United States Personnel in Spain for any violation of rules of discipline arising from an act or omission, which constituted an offense for which he was tried by the authorities of Spain.

### Article XXIII

Whenever a member of the United States Personnel in Spain is arrested, detained, or otherwise prosecuted by Spanish authorities, in criminal or quasi-criminal (cases of contraband) proceedings, he will be appropriately advised, through an interpreter if required, of the specific charges against him, and of his legal rights. The military authorities of the United States will be advised immediately of his arrest, detention, or prosecution, and he will then be permitted to communicate with a representative of the Unit-

**2.** Agreement between the United States of America and Spain implementing Article V of the Treaty of Friendship and Cooperation of

January 24, 1976, TIAS 8361, 27 UST 3005, 3095 (1976).

ed States Government, who may be present throughout the investigative and judicial phases of the entire proceedings even in the event such proceedings are held behind closed doors for reasons of public order or morality.

 In this case, we find it unnecessary to decide, as an abstract proposition, the complex issues relating to the accused's standing to raise the asserted violation of this agreement.[3] In our view, Article XXII only encompasses ordinary criminal trials such as those initiated in the Spanish Court of Instruction. See United States v. Cadenhead, 14 U.S.C.M.A. 271, 34 C.M.R. 51 (1963); United States v. Reed, 33 C.M.R. 932 (A.F.B.R. 1963). The purpose of both the Contraband Court and the Spanish Court of Social Rehabilitation and their limited powers supports this view. The specific reference to contraband proceedings in Article XXIII also supports that conclusion. Otherwise, there would be ·no need to specifically include such a reference if contraband proceedings were simply criminal trials.

The evidence suggests that the parties to the agreement also intended this interpretation, and their interpretation and practice in its application must be taken into account.[4] If we adopted the interpretation urged by appellate defense counsel, the Spanish action in waiving jurisdiction before the Court of Instruction makes little sense. Then, no ordinary criminal court in Spain, the situs of these serious crimes, would have had jurisdiction. Our conclusion is further supported by the fact that the Contraband Court only considered the 1 June transaction although accused was engaged in a continuing course of criminal conduct. Thus, we find no infirmity of jurisdiction.

We have considered the remaining assignments of error and have resolved them adversely to the accused. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

POWELL, Senior Judge, and MAHONEY, Judge, concur.

---

3. See United States v. Cadenhead, 33 C.M.R. 742, 746 (A.F.B.R. 1963), affirmed, 14 U.S.C. M.A. 271, 34 C.M.R. 51 (1963); United States v. Reed, 33 C.M.R. 932 (A.F.B.R. 1963). Military courts have generally recognized that an individual accused lacks standing to challenge jurisdiction by one sovereign rather than another based on asserted treaty violations. United States v. Evans, 6 M.J. 577 (A.C.M.R. 1978),

pet. denied, 6 M.J. 239 (C.M.A. 1979); United States v. Bowie, 34 C.M.R. 808 (A.F.B.R. 1964), affirmed, 14 U.S.C.M.A. 631, 34 C.M.R. 411 (1964).

4. See Article 31, Vienna Convention on the Law of Treaties, not in force, reprinted Air Force Pamphlet 110–20, Selected International Agreements, 1 June 1973, at 11–2.